**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BEVERLY S. THOMAS,**
**Claimant Below, Petitioner**

**vs.)    No.  17-1104** (BOR Appeal No. 2052061)
                              (Claim No. 2012025656)

**BRAYMAN CONSTRUCTION,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Beverly S. Thomas, by Robert L. Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Brayman Construction, by Lisa Warner Hunter, its attorney, filed a timely response.

The issue on appeal is whether Ms. Thomas's labral tear is related to her compensable injury. On November 15, 2016, the claims administrator denied Ms. Thomas's request to add labral tear as a compensable condition in her workers' compensation claim.  The Office of Judges affirmed the claims administrator in its June 28, 2017, Order. The Order was affirmed by the Board of Review on November 17, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Thomas worked through her local union as a laborer. On August 29, 2011, she was working removing grease from a portion of a crane and the crane operator turned the body of the crane, pinning her between the body of the crane and heavy crane weights. A September 12, 2011, right hip x-ray showed no fracture, dislocation, bone destruction, or osteonecrosis. Ms. Thomas was diagnosed with a right hip/groin strain/contusion. An October 28, 2011, MRI of the right hip was negative for evidence of a fracture or dislocation, showed no abnormal periosteal reaction or edema with the muscle, and showed no labral abnormality. The claim was held compensable for a right hip/groin strain on December 6, 2011.

1

P. Kent Thrush, M.D., performed an independent medical evaluation on January 26, 2012. He noted that Ms. Thomas walked with a slight limp and that her range of motion of the hips was slightly decreased on the right. Dr. Thrush diagnosed hip contusion, pelvic contusion, and hip adductor strain. Joseph A. Snead, M.D., performed an independent medical evaluation on December 26, 2012. He noted that Ms. Thomas continued to work but indicated she chose more limited jobs. Ms. Thomas continued to have right groin pain and right greater trochanter pain. Dr. Snead opined she would continue to have some type of groin/hip pain with heavy activity. He recommended a follow-up MRI if Ms. Thomas continued to have the pain and agreed with the 2% whole person impairment.

A July 12, 2013, right hip MRI revealed femoroacetabular impingement, abnormal separation along the central and posterior aspect of the superior labrum, additional separation of the posterior labrum, and mild common hamstring tendinosis. Ms. Thomas sought treatment from Benjamin Moorehead, M.D., on July 15, 2013. Dr. Moorehead noted the MRI showed a tear and separation of the acetabular labrum and diagnosed right hip stem acetabular labral tear and muscular strain. He recommended an intraarticular steroid injection of the femoroacetabular joint. On August 30, 2013, Ms. Thomas reported the injection provided relief for about a week. She continued to work but had significant pain when doing so. Dr. Moorehead diagnosed right hip acetabular labral tear and hip strain. He recommended a consultation with Adam Klein, M.D.

On October 15, 2013, Dr. Klein saw Ms. Thomas for a surgical consultation. He opined that "at this point arthritis will determine the fate of her hip and not the presence of a labral tear". He noted that patients over forty years of age experienced greater failure with hip preservation surgery than younger patients. He recommended a consultation with John Christoferetti, M.D., regarding the surgical options.

On January 6, 2015, a diagnosis update was completed adding labral tear as a secondary condition. The diagnosis was based on Ms. Thomas's hip pain and restricted range of motion. The claims administrator denied the request on November 15, 2016.

Dr. Thrush evaluated Ms. Thomas for the second time on February 2, 2017. He noted the claimant had an orthopedist for over three years, that she had gained over seventy-five pounds since he last saw her, and that she walked with a limp. Dr. Thrush opined that the claimant had early arthritis in the right hip and that early arthritis was frequently accompanied by labral pathology. However, in his opinion the labral tear was not caused by the injury as it was not noted on the first MRI. He diagnosed resolved hip sprain and hip contusion in relation to the injury.

The Office of Judges affirmed the claims administrator's decision on June 28, 2017. It found that the weight of the medical evidence supported Dr. Thrush's opinion that the right hip labral tear was not causally related to the August 29, 2011, injury. The Office of Judges determined that the medical evidence showed that Ms. Thomas injured her right hip on August 29, 2011. Drs. Thrush and Snead agreed that the right hip MRI that was performed two months after the injury was normal. Two years after the injury, Ms. Thomas underwent a second MRI

that showed a labral tear. The Office of Judges determined that the MRI taken two months after the injury was more persuasive and probative than one taken two years after the injury. It noted that three different physicians had reviewed the 2011 MRI and not one of them found a labral tear. The Office of Judges also noted that Dr. Moorehead, who attributed the labral tear to the injury, did not mention the 2011 MRI, and therefore, his opinion regarding the etiology of the labral tear was incomplete. The Office of Judges relied on the opinion of Dr. Thrush, who explained that Ms. Thomas had femoroacetabular impingement, which was a pre-existing abnormality of the hip that could lead to early arthritis.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on November 17, 2017. After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The medical evidence shows Ms. Thomas had a compensable contusion to the right hip. The physicians that reviewed the right hip MRI that followed the injury agreed the MRI did not reveal a labral tear. Ms. Thomas was unable to prove by a preponderance of the evidence that the labral tear seen on her right hip MRI taken two years after her injury was caused by the injury. Therefore, the Board of Review did not err in affirming the Office of Judges' Order.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker